# No. 18-16981

IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CRISTA RAMOS, *et al.*,

*Plaintiffs – Appellees,*

vs.

KIRSTJEN NIELSEN, *et al.*,

*Defendants – Appellants.*

On Appeal from the United States District Court
for the Northern District of California
Honorable Edward M. Chen, District Judge
Case No. 3:18-cv-01554-EMC

**APPELLEES' SUPPLEMENTAL REPLY BRIEF
IN RESPONSE TO AUGUST 21, 2019 ORDER**

| | |
|---|---|
| **ACLU FOUNDATION OF SOUTHERN CALIFORNIA** | **SIDLEY AUSTIN LLP** |
| AHILAN T. ARULANANTHAM | ALYCIA A. DEGEN |
| aarulanantham@aclusocal.org | adegen@sidley.com |
| JESSICA KARP BANSAL | SEAN A. COMMONS |
| jbansal@ aclusocal.org | scommons@sidley.com |
| ZOË N. MCKINNEY | ANDREW B. TALAI |
| zmckinney@aclusocal.org | atalai@sidley.com |
| 1313 W. EIGHTH ST. | 555 W. FIFTH ST., STE. 4000 |
| LOS ANGELES, CA 90017 | LOS ANGELES, CA 90013 |
| (213) 977-5211 | (213) 896-6000 |

*Attorneys for Plaintiffs-Appellees*
*(Additional Counsel Listed on Next Page)*

| | |
|---|---|
| **NATIONAL DAY LABORER ORGANIZING NETWORK**<br>CALEB SOTO<br>csoto@ndlon.org<br>1030 S. ARROYO PWY., STE. 106<br>PASADENA, CA 91105<br>(626) 799-3566 | **SIDLEY AUSTIN LLP**<br>NICOLE MARIE RYAN<br>nicole.ryan@sidley.com<br>RYAN M. SANDROCK<br>rsandrock@sidley.com<br>555 CALIFORNIA ST., STE. 2000<br>SAN FRANCISCO, CA 94104<br>(415) 772-1200 |
| **MARK E. HADDAD**<br>markhadd@usc.edu<br>PART-TIME LECTURER IN LAW<br>USC GOULD SCHOOL OF LAW *<br>UNIV. OF SOUTHERN CALIFORNIA<br>699 EXPOSITION BLVD.<br>LOS ANGELES, CA 90089<br>(213) 675-5957 | AMANDA FARFEL<br>afarfel@sidley.com<br>MOHINDRA RUPRAM<br>mrupram@sidley.com<br>555 WEST FIFTH ST., STE. 4000<br>LOS ANGELES, CA 90013<br>(213) 896-6000 |
| **ACLU FOUNDATION<br>OF NORTHERN CALIFORNIA**<br>WILLIAM S. FREEMAN<br>wfreeman@aclunc.org<br>39 DRUMM ST.<br>SAN FRANCISCO, CA 94111<br>(415) 621-2493 | |

*Additional Counsel for Plaintiffs-Appellees*

*\* Institution listed for identification purposes only*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

I. Defendants Waived Any Evidentiary Objections.............................................3

II. The District Court Did Not Abuse Its Discretion............................................4

III. The Court Should Affirm The Injunction........................................................6

CONCLUSION ......................................................................................................7

CERTIFICATE OF COMPLIANCE .....................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.O. Smith v. Fed. Trade Comm'n*,
 403 F. Supp. 1000 (D. Del. 1975) ............................................................................5

*Dep't of Commerce v. New York*,
 139 S. Ct. 2551 (2019) ...................................................................................... 1, 6

*Great Basin Mine Watch v. Hankins*,
 456 F.3d 955 (9th Cir. 2006) ....................................................................................5

*Harkness v. Sec'y of Navy*,
 858 F.3d 437 (6th Cir. 2017) ....................................................................................4

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
 463 U.S. 29 (1983) ....................................................................................................5

*Pfingston v. Ronan Eng'g Co.*,
 284 F.3d 999 (9th Cir. 2002) ....................................................................................4

## INTRODUCTION

Defendants accuse the district court of committing reversible error by finding the TPS termination decisions were likely the result of a "predetermined presidential agenda to end TPS," ER 29, because its order relied on evidence outside the Government's certified administrative record. That extra-record evidence shows agency staff admitting during the decision-making process that termination recommendations disregarded the "standard metrics" on which prior TPS decisions rested. ER 25. It includes the Secretary's private statement that "[t]he TPS program must end for these countries soon," which she made before she "had all the necessary information to make a determination . . . whether the country conditions continue." ER 145. And it shows outcome-driven officials reverse-engineering recommendations to get to "the conclusion [they were] looking for," SER 14, by "repackag[ing]" adverse country conditions research, SER 277, and focusing only on the "initial disasters prompting the designations" to provide "the strongest argument for termination." ER 25.

Neither the APA nor the Fifth Amendment require this Court to "exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019). Well-settled precedent permits review of materials beyond the certified record to resolve factual questions on which the agency made *no*

*findings*—including in cases involving disputes about whether unexplained departures from past practice occurred, and certainly in constitutional cases.

In any event, the certified record contains sufficient evidence to affirm. The record includes the Secretary's statement that the TPS terminations were "a strong break with past practice," designed to "send a clear signal that TPS in general is coming to a close . . . consistent with the President's position." ER 632. It shows the White House "coordinate[d]" the "process for terminating" TPS for several countries at once. ER 779. And it illustrates that the resulting decisions ignored "current challenges" because they "cannot be directly tied" to the original triggering events, ER 248, 328, 639, even though prior administrations had considered such "subsequent" events. ER 191, 356, 688; *see also* ER 304 (directing that TPS decisions be "based on an evaluation of the conditions that initially warranted granting TPS.").

Should the Court choose to address evidentiary disputes during this interlocutory appeal, it should nonetheless preserve the preliminary injunction and permit the district court to assess the impact of any discovery-related concern in the first instance. At this preliminary stage, the only question is whether a temporary injunction preserving the immigration status (and employment authorization) of 300,000 people, all of whom have lived in this county lawfully for years, should remain in place pending final judgment. That decision should reflect the court's

consideration of all relevant evidence, including new evidence Plaintiffs already have obtained during this appeal. Vacating the injunction would be catastrophic for the hundreds of thousands of lawful residents and their American children whose lives would be upended if TPS status were revoked prior to a final judicial decision.

## ARGUMENT

### I. Defendants Waived Any Evidentiary Objections.

Defendants still have no coherent position on what evidence cannot be considered. Their continued inconsistency further illustrates they waived this issue.

The incoherence manifests in several ways. Defendants oppose "reliance on extra-record evidence," Defs.' Suppl. Br. 9, but have relied on materials beyond the certified record in *every* brief about the preliminary injunction, including their latest. *Id.* at 12 (citing decisions extending TPS for four countries constituting 5% of TPS holders), 13 (urging reliance on past decisions). Defendants object to considering the Secretaries' public congressional testimony, *id.* at 17, but not to non-public emails about White House TPS strategy and efforts to generate crime and benefits information to justify terminations, or Decision Memos from past TPS decisions. *Compare id.* (failing to object to those emails and memos), *with* Pls.' Suppl. Brief, App. A, Chart 2 ¶¶ 7–9, 28–29 (identifying those documents as not included in certified record). Defendants concede many deliberative materials are properly considered, *id.* at 1, 7, but never explain why other deliberative materials must be excluded. Pls.' Suppl. Brief, App. A, Chart 2 ¶¶ 13–29 (identifying deliberative

3

materials not included in certified administrative record). And Defendants ask this Court to disregard an email exchange as extra-record, Defs.' Suppl. Br. 18 (referring to Degen Decl. Ex. 27), even though it is in the certified record. ER 922.

It thus remains unclear, *even now*, which evidence Defendants believe may permissibly be considered and why. They have waived this issue.[1]

## II. The District Court Did Not Abuse Its Discretion.

The district court did not abuse its discretion in ordering discovery. As to constitutional claims, courts have consistently held the APA does not limit discovery to the administrative record. Pls.' Suppl. Br. 12–14. Defendants cite one case suggesting otherwise, *Harkness v. Sec'y of Navy*, 858 F.3d 437 (6th Cir. 2017), but the agency there had made findings about the constitutional claims. *Id*. at 442. Moreover, *Harkness* turned on a unique statute (inapplicable here) that involved review of certain military decisions. *Id*. at 446 n.6. The court cited no law holding constitutional claims against agencies must generally be reviewed on the record.

Discovery also was appropriate on the APA claim. Defendants cite cases about the general record-review limitation, but none involve alleged unexplained

---

[1] The Court's supplemental briefing order does not cure the waiver. Defs.' Suppl. Br. 9. Unlike in the cases Defendants cite, the issues here do not involve a pure legal question that "either does not depend on the factual record developed below, or [where] the pertinent record has been fully developed." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). Nor did those cases involve failure to appeal a magistrate's ruling, invited error, or interlocutory review of a discovery issue.

4

departures disputed by the agency. Rather, most involve substantive challenges to agency decisions, for which review is rightly limited to the record. *E.g.*, *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 975 (9th Cir. 2006) (substantive challenge to agency's decision about environmental impact assessment). Defendants also cite *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29 (1983), but it held that when an agency "chang[es] its course," it must have a rational basis for doing so and "a reasoned analysis for *the change*." *Id.* at 42–43 (emphasis added). Thus, Defendants must show they have *not* changed the past practice to prevail—and that inquiry necessarily requires review beyond the record.

Defendants also do not dispute their initial administrative records were incomplete, which independently justified discovery. ECF 43 at 1–2; ECF 39 at 76–78 (discussing district court's concerns with government's representation that "informal deliberations" were initially excluded). Defendants fault the district court for ordering discovery *beyond* the certified administrative record, Defs.' Suppl. Br. 9–16, but Defendants had not produced the certified record when the court denied their motion to dismiss, even though the Sudan termination was fast approaching. Under those circumstances, it was appropriate to order limited discovery that mirrored the scope of the administrative record. *See, e.g.*, *A.O. Smith v. Fed. Trade Comm'n*, 403 F. Supp. 1000, 1009, 1012–13 (D. Del. 1975) (holding, before production of certified record, that discovery on APA claim would be appropriate).

5

Finally, Defendants' position contravenes *Commerce*, which permitted review beyond the record on a showing of bad faith. 139 S. Ct. at 2573–76. Here too, the district court found evidence suggesting "this change [in agency practice] may have been made *in order to implement and justify a preordained result*." ER 27 (emphasis added). *Commerce* considered evidence beyond the record on appeal, just as Plaintiffs request here, given comparable district court findings on pretext.

**III. The Court Should Affirm The Injunction.**

Regardless of how the Court resolves the evidentiary dispute, it should affirm. The record—however defined—contains ample evidence supporting the injunction.

On the APA claim, Defendants say a "common-sense view" dictates that the conditions that "gave rise to the countries 'temporary' designations" dissipated long ago. Defs.' Suppl. Br. 2. But this begs the question: should the Secretary look only at conditions that *gave rise* to the designations or also at intervening conditions, as prior Secretaries had done for two decades? It is hardly common sense that conditions *as a whole* in these countries now warrant terminating TPS. Yet that is the question Secretaries had consistently asked under prior administrations.

Defendants also assert the district court relied "only" on former Director Rodriguez's declaration to show the change in practice. *Id.* at 16. That is wrong. The district court cited the Secretary's "strong break with past practice" statement, ER 22, and the Federal Register Notices and Decision Memos from prior

6

administrations, which illustrate a dramatic change. ER 19 (citing ECF 55 at 27–33) (comparing FRNs); *compare* ER 20 (citing Obama-era Decision Memos recommending extensions because of "subsequent environmental disasters"), *with* ER 23–25 (citing Trump-era Decision Memos recommending termination because "current challenges cannot be directly tied" to the original triggering event).

On the discrimination claim, Defendants assert no evidence shows that the Secretaries harbored animus. Defs.' Suppl. Br. 13–15. But Plaintiffs need only establish conduct motivated by the wishes of another actor—here, the President—who was himself motivated by animus. Answering Br. 57–58. The evidence shows the Secretary made the TPS decisions to "send a clear signal that TPS in general is coming to a close . . . *consistent with the President's position on immigration*." ER 29 (citing Degen Dec. Ex. 30) (emphasis added); *see also* ER 779 (White House officials "coordinate[d] . . . process for terminating" four countries at once).

The district court did not commit clear error in finding serious questions as to whether the termination decisions were motivated by the President's racial animus. At the very least, reasonable people can disagree about whether the President's repeated and denigrating statements toward TPS holders raise "serious questions" of discriminatory intent. Nothing more is needed to affirm the preliminary injunction.

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be affirmed.

Dated:  October 4, 2019                    Respectfully submitted,

**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

s/ *Ahilan T. Arulanantham*
AHILAN T. ARULANANTHAM

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 32(a)(5), 32(a)(6), 32(a)(7)(B), and 32(g) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 32-1(a), I certify that the attached brief is in 14-point proportionally spaced Times New Roman font, and does not exceed 7 pages, exclusive of the portions of the brief excepted by Rule 32(f).

Dated:  October 4, 2019	**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

s/ *Ahilan T. Arulanantham*
AHILAN T. ARULANANTHAM

*Attorneys for Plaintiffs-Appellees*